Aníbal Maldonado and his wife Isabel Tirado, Plaintiffs, Appellees and Appellants, *v.* Emiliano Rodríguez, Defendant, Appellant and Appellee.

No. 8283. Argued May 21, 1941.—Decided June 2, 1941.

*Luis Mercader,* for defendant, appellant and appellee. *Diego E. Ramos,* for plaintiffs, appellants and appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In the amended complaint filed before the Municipal Court of Arecibo, the plaintiffs alleged that they were owners of a piece of land situated in the Ward Río Arriba of Arecibo, and that upon said land there is a wooden house which belongs to the defendant that is worth $200, and which occupies part

of said land without payment of rent or consideration by the defendant for the use of the area of the lot which the house occupies, and that he has refused to withdraw the house and leave the lot, which the defendant can do without harming the land. In consequence, the plaintiffs requested a judgment stating that they have the right to acquire the defendant's building according to Section 297 of the Civil Code, after payment of the indemnity established by Sections 382 and 383 of the same statute; and to that purpose they were ready and willing to deposit in court, at the defendant's disposal, the amount of $200, which the house was worth, or to deposit the amount in which said value was assessed by experts appointed by the court; and finally, that once the judgment is final, the defendant be ordered to leave the house free and at the disposal of the plaintiffs, and in case he refuses that he be ejected by the marshal.

The defendant in his answer denied the essential facts of the complaint and especially that the house belonged solely to him, and as a defense alleged that the house was worth more than $700 and was situated on a farm of three cuerdas which does not belong to the plaintiffs but to the Succession of Domena.

After the proper trial, the municipal court gave judgment for the plaintiffs and appraised the house at $225. The case having been appealed to the district court, the trial was held *de novo* and again the court found for the plaintiffs but the house was appraised at $400, which amount the plaintiffs were ordered to deposit in court at the disposal of the defendants, and he was ordered to move from the house. From this judgment both parties have appealed, and the appeals have been prosecuted jointly.

■ The only error assigned by the plaintiffs in their appeal charges that the lower court appraised the house at the excessive sum of $400, having been moved by bias, prejudice and partiality, or manifest error in weighing the evi-

dence. This sole error can be decided jointly with the fifth assignment made by the defendant, which charges that the house is worth $700 and that the court committed error in weighing the evidence. We have read the testimony of the experts on one and the other side as they appear from the transcript of the evidence and we are of the opinion that we must not change the conclusion at which the lower court arrived in setting the price of the house. While the defendant's witnesses stated that the house was worth between $500 and $700, the plaintiffs' experts stated it was worth only between $200 and $225. The lower court adopted a middle course between two evidently exaggerated estimates and set the value at $400. It committed no error and in consequence, the plaintiffs' appeal must be dismissed.

Let us examine the other errors assigned by the defendant. The first one consists in that the lower court did not hold that the complaint does not contain facts sufficient to state a cause of action. Although no demurrer was raised on that point, as appears from the record, the amended complaint contains the averments necessary to the action exercised by the plaintiffs. Section 297 of the Civil Code provides:

"Section 297.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in section 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

The defendant appellant maintains that it is not alleged that he constructed in good or bad faith and that the proper indemnity was not offered to him in payment. The good faith is always presumed and therefore there was no need to allege it specifically, and as to the indemnity, the plaintiffs requested in their complaint that the court order them to pay the indemnity provided by Section 297, *supra*, and

pledged themselves to deposit $200 or any other amount estimated by experts appointed by the court. There was no error.

The second assignment states that the court acted without jurisdiction because it was proven that the house was worth more than $700 and that therefore the municipal court had no original jurisdiction in the case and neither did the district court on appeal. We have already held that the lower court did not commit error in appraising the value of the house at $400, and therefore, this error does not exist either.

The third assignment charges that the lower court committed error in adjudging valid the donations made by Margarita Domena although not made according to law, and thereby holding that plaintiffs are owners of the lot where the defendant's house is situated.

From the evidence presented by the plaintiffs it appears proven that they acquired the lot of land where the house stands, by purchase from María Pía González by deed No. 63 executed on October 5, 1938; that María Pía González had acquired it ten years before by deed No. 99 executed on September 9, 1928, by purchase from Margarita Domena and that she in turn had acquired it by donation made to her by all her brothers as appears from deeds No. 69 executed on June 30, 1928 and No. 72, executed on July 6, 1928.

The defendant-appellant's argument is that these donations are null and void because in the aforesaid deed it is stated that Ramón Domena, the father, donated, while living, the house and land to his daughter Margarita; and that since Don Ramón was married, his wife had an undivided interest of one-half of the property and she took no part in the donations. In the first place, we shall say that what is stated in the deeds is that Ramón Domena, Margarita's father, had made her the gift of a house, but nowhere is mention made of any land whatsoever. As to whether the donations made

to Margarita by her brothers are valid or not, this Court already decided the issue raised in the case of *Arroyo et al.* v. *Bruno et al.*, 23 P.R.R. 757, 764, where it was said:

"Moreover, as the defendants are not the lawful heirs of the donor, it is obvious that they have no right of action to oppose the gift to which the complaint refers. *Such right of action, if any there be, inures exclusively to the lawful heirs, who, according to the complaint, are persons distinct from the defendants.*"

The same situation exists in the case at bar. The defendant has not alleged or proved that he is the legitimate heir of the donors in this case and therefore cannot assail the gift made by the Domenas in favor of Margarita, from whom the title of María Pía González issues, and that of the plaintiffs herein.

██ The defendant, by the fourth assignment, charges that the lower court committed error in holding that he must leave the house at the disposal of the plaintiff after the payment of $400, although he only owns a cotenancy of one-half in the same and the other half belongs to his divorced wife, Elena Iguina.

As we have seen by the extract we have made of the pleadings, in the answer the defendant denied the averment made in the complaint that the house belonged exclusively to him. From the evidence presented by the defendant and admitted by the court, it appears that the house object of this suit was acquired by the defendant and his divorced wife, Elena Iguina, by exchange for other properties made with the spouses Alfonso Muriente and Marcolina López. It so appears from deed No. 83, executed in Arecibo on August 25, 1938, before Notary J. Córdova Rivera, where the following was stated:

"*First:* That Emiliano Rodríguez Suazo and Elena Iguina, *while they were married to each other, acquired for the conjugal partnership* a property, which is recorded at volume 89, page 176, and which is subject to a mortgage for a principal debt of Three Hundred and

Fifty Dollars ($350) and One Hundred Dollars ($100) as additional credit, in favor of Angel M. Yumet. The property is described as follows: (It is described.).

"*Second:* That although Emiliano Rodríguez Suazo and Elena Iguina *have been divorced, the conjugal partnership has not been divided, wherefore, the property hereinbefore described belongs to both.*

"*Third:* That the property aforesaid has a value of One Thousand Four Hundred Dollars ($1,400).

"*Fourth:* That the other party, the spouses Alfonso Muriente and Marcolina López are owners of the following: (The house object of this action is described.)

*Fifth:* That having agreed to the exchange of the aforesaid properties, now and by the present instrument, Emiliano Rodríguez Suazo and Elena Iguina *exchange their farm of four and a half cuerdas,* hereinbefore described, with the spouses Alfonso Muriente and Marcolina López for the latter's property, *that is, the wooden house,* which belongs to the aforesaid spouses, *and from this moment Don Emiliano Rodríguez Suazo and Doña Elena Iguina become sole owners of the house that previously belonged to the spouses Muriente López,* and likewise the spouses Muriente López become sole owners of the farm of four and a half cuerdas that formerly belonged to Emiliano Rodríguez Suazo and Elena Iguina. But taking into consideration that the farm of four and a half cuerdas is worth One Thousand Four Hundred Dollars, while the house described is only worth Four Hundred and Fifty Dollars, the spouses Muriente–López, to complete the value of the farm of four and a half cuerdas, appraised at One Thousand Four Hundred Dollars ($1,400), *hereby deliver to Emiliano Rodríguez Suazo and Elena Iguina the sum of Four Hundred and Fifty Dollars ($450) in cash;* plus a note for One Hundred and Fifty Dollars ($150) and the aforesaid spouses Muriente–López bind themselves to pay the Three Hundred and Fifty Dollar mortgage which encumbers the farm in favor of Mr. Yumet. So that the value of the house, Four Hundred and Fifty Dollars ($450) plus Four Hundred and Fifty ($450) in cash; plus One Hundred and Fifty ($150) in a promissory note; plus Three Hundred and Fifty ($350) of Yumet's mortgage, make a total of One Thousand Four Hundred Dollars, ($1,400) which is a value equal to that of the farm. And in this manner the exchange has been performed." (Italics supplied.)

This evidence was not controverted in any way by the plaintiffs and it shows that the house object of this suit does not belong solely to the defendant but that his *ex*-wife Elena Iguina is the owner of a cotenancy of one-half of the house, since when the marriage was dissolved she immediately acquired one-half of all the community property there might be (*Fabián* v. *Registrar of San Juan*, 25 P.R.R. 838), and she intervened in the exchange thereof for the house in question. It is true, as plaintiffs say, that the demurrer for non-joinder of parties defendant cannot be raised for the first time on appeal, as was held in *Plazuela Sugar Company* v. *García*, 22 P.R.R. 42, but this is not the main issue, which is that in the case at bar the co-owner of the house has not lost a suit at law, has not had a day in court. She should have been made a party defendant but the plaintiffs did not do so, and when the documentary evidence showed that the defendant only owned an undivided half of the house, the judgment of the lower court should have been limited to the acknowledgment of the plaintiffs' right to acquire the defendant's cotenancy. The error was committed but is not a ground for reversal because, according to Section 74 of the Code of Civil Procedure, the trial court could decide the issue joined between the parties without prejudice to, or saving the rights of, the co-owner Elena Iguina. In consequence thereof, the judgment appealed from must be modified in the sense of ordering the plaintiffs to deposit with the clerk of the lower court the sum of $200, value of the cotenancy owned by the defendant equivalent to one-half of the house object of the suit, without prejudice to the filing of the proper action by the plaintiffs against the co-owner Elena Iguina in order to acquire the other cotenancy, after payment of the indemnity for its value as appraised in said suit, and so modified, said judgment is affirmed.